**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gloria Baca, | No. CV-20-01036-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Johnson & Johnson, et al., | |
| Defendants. | |

Pending before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim (Doc. 14). Plaintiff filed her Response (Doc. 18), and Defendants filed their Reply (Doc. 22). The matter is fully briefed.

**I.    Background**

This case is one of myriad similar cases in which plaintiffs allege defects in pelvic repair systems developed by Defendants Johnson & Johnson and Ethicon, Inc.[1] Before June 21, 2018, such cases would have been transferred to the Southern District of West Virginia as part of the Multi-District Litigation, *In re: Ethicon, Inc. Pelvic Repair System Products Liability Litigation*, MDL No. 2327 ("MDL"). (Doc. 26-1 at 2). The MDL has since stopped accepting transfers, and so this case comes before this Court. (*Id.*)

Plaintiff's Complaint alleges that she, an Arizona domiciliary, underwent an "anterior/posterior repair cystoscopy surgery" in 2006 and was implanted with a Gynecare TVT mesh (the "Product"), which was manufactured by Defendant Ethicon, Inc. (Doc. 1

---

[1] A list of these cases may be found here: https://www.wvsd.uscourts.gov/caselist/caseviewlist.aspx?mdl=2327

at ¶¶ 1, 2). In 2019, "Plaintiff underwent vaginal mesh revision/excision, posterior repair, and enterocele repair surgery . . . ." (*Id.* at ¶ 3). These first three allegations are the only ones that appear tailored to Plaintiff Gloria Baca. Many of the Complaint's remaining 244 allegations can be found, word-for-word, in other complaints filed in various federal courts.[2] *See e.g.,* Complaint, *Bauer v. Ethicon, Inc.*, (No. 5:20-cv-00133) (N.D. Fla. Apr. 30, 2020); Complaint, *Curry v. PHC-Cleveland*, (No. 4:20-cv-00058) (N.D. Miss. Apr. 2, 2020); Complaint, *Pranger v. Johnson & Johnson*, (No. 1:20-cv-00142) (N.D. Ind. Mar. 30, 2020). This Court, too, has encountered some of the same allegations in previous complaints. *See Hix v. Bos. Sci. Corp.*, 2019 WL 6003456 (D. Ariz. Nov. 14, 2019).

This Complaint brings sixteen causes of action.[3] There are four strict liability claims, four negligence claims, three fraud claims, one claim for violating consumer protection laws, two breach of warranty claims, one claim for unjust enrichment, and one final claim for punitive damages. (Doc. 1 at ¶¶ 89–242). Defendants move to dismiss them all for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Doc. 14 at 1).

**II.  Pleading Standard**

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of a claim. *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011). Complaints must make a short and plain statement showing that the pleader is entitled to relief for its claims. Fed. R. Civ. P. 8(a)(2). This standard does not require "'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not generally require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See*

---

[2] The Court notes that the Complaint fails to comply with LRCiv 7.1's formatting requirements. It also contains many typographical oddities and errors, such as repeatedly referring to "Plaintiffs" when there is only one Plaintiff.

[3] While the Complaint enumerates seventeen causes of action, it skips a sixteenth claim.

*Twombly*, 550 U.S. at 555. A complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

If a complaint alleges fraud, then it "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy the particularity requirement, a complaint must include "an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)). In other words, it "must 'identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false.'" *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (quoting *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)).

Dismissal of a complaint for failure to state a claim can be based on either the "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistren v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). In reviewing a motion to dismiss, "all factual allegations set forth in the complaint 'are taken as true and construed in the light most favorable to the plaintiffs.'" *Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001) (quoting *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996)). But courts are not required "to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

**III.  Discussion**

Defendants make several arguments why the Complaint fails to state a claim. The first is that the Complaint is an example of an impermissible "shotgun" pleading. The rest address the Complaint's substance. The Court will address each in turn.

/ / /

### a. Shotgun Pleading

Defendants argue the Complaint's construction forces them to "root through the entire Complaint to ascertain which of the 247 paragraphs may apply to each Defendant and each cause of action." (Doc. 14 at 4). They argue this "shotgun" or "puzzle" style of pleading is so unhelpful that the Court should dismiss the Complaint on those grounds alone. (*Id.* at 3). "The key characteristic of a shotgun pleading is that it 'fail[s] to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests,' which renders them disfavored and usually subject to dismissal." *Casavelli v. Johanson*, 2020 WL 4732145, at *9 (D. Ariz. Aug. 14, 2020) (quoting *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015)). Upon review, the Court finds that the Complaint adequately gives notice to Defendants to the extent that it cannot be characterized as a shotgun pleading.

### b. Strict Liability

The Complaint's strict liability claims include manufacturing defect, failure to warn, defective product, and design defect. (Doc. 1 at ¶¶ 95–119).

#### i. Manufacturing Defect

Defendants argue the Complaint fails to state a claim for manufacturing defect because it does not identify a flaw in the manufacturing process. (Doc. 14 at 6). Plaintiff argues a manufacturing defect is evident by the fact that she suffered an injury from the Product. (Doc. 18 at 4).

In Arizona, the crux of a manufacturing defect claim is that the defective product differs from the manufacturer's intended design or from other ostensibly identical units of the same product line. *See Spedale v. Constellation Pharm. Inc.*, 2019 WL 3858901, at *15 (D. Ariz. Aug. 16, 2019) ("A plaintiff should compare the injury-inducing product with other non-defective products in the same line"); *Hearn v. R.J. Reynolds Tobacco Co.*, 279 F. Supp. 2d 1096, 1115 (D. Ariz. 2003). Generally, a manufacturing defect claim posits that the product is flawed as a result of something that went wrong during the manufacturing process, whether or not a suitable design was in place. *See Gomulka v.*

*Yavapai Mach. and Auto Parts, Inc.*, 745 P.2d 986, 988–989 (Ariz. Ct. App. 1987). A plaintiff pursuing a manufacturing defect claim must identify or explain how the product either deviated from the manufacturer's intended result or how the product deviated from other seemingly identical models; thus, a bare allegation that the product had a manufacturing defect is an insufficient legal conclusion. *See Enedina Coronado, et al., v. Costco Wholesale Corp.*, 2019 WL 5448312, at *4 (D. Ariz. Oct. 24, 2019).

The Complaint certainly claims that the Product was defective. (Doc. 1 at ¶ 21). However, the Complaint does not identify a specific manufacturing defect, either by failing to manufacture the Product as designed, or by failing to manufacture the particular Product in a similar way as other identical units. As this Court has said in other cases, Plaintiff's summary allegations that the Product "failed to perform as designed and intended, without explanation as to how those defects are tied to the manufacturing process, do not demonstrate that [the Product] had a manufacturing defect." *Hix*, 2019 WL 6003456, at *4. Plaintiff's claim under a manufacturing defect theory, Count II, will be dismissed.

        *ii. Failure to Warn*

Defendants argue the Complaint fails to adequately plead a failure to warn, also known as an informational defect under Arizona law. (Doc. 14 at 7). They also argue that Arizona's learned intermediary doctrine applies to this case, with which Defendants would have satisfied their duty to warn by providing an adequate warning to Plaintiff's physicians. (*Id.* at 7–8). Plaintiff argues that the Complaint shows the warnings were inadequate and that the intermediary doctrine does not apply to this case. (Doc. 18 at 4–5).

A prima facie case of strict liability for informational defect requires a plaintiff to show (1) that the defendant had a duty to warn, (2) that the missing warning made the product defective and unreasonably dangerous, (3) that the warnings were absent when the product left defendant's control, and (4) that the failure to warn caused plaintiff's injury. *Sw. Pet Prods., Inc. v. Koch Indus., Inc.*, 273 F. Supp. 2d 1041, 1060 (D. Ariz. 2003) (citing *Gosewisch v. Am. Honda Motor Co., Inc.*, 737 P.2d 376, 379 (Ariz. 1987) (superseded on other grounds by A.R.S. § 12-2505)).

Under the learned intermediary doctrine, a medical device manufacturer satisfies its duty to warn patients of the foreseeable risks involved with its products if it provides a complete, accurate, and appropriate warning to the patient's health-care provider. *Watts v. Medicis Pharm. Corp.*, 365 P.3d 944, 949 (Ariz. 2016) (adopting the Restatement (Third) of Torts § 6(d)). While Plaintiff says the learned intermediary doctrine does not apply, she cites no authority and makes no argument directly supporting this position. (Doc. 18 at 4). This case involves a medical device sold by a manufacture to a health-care provider for use by a patient, and the Court, therefore, finds that the learned intermediary doctrine applies.

With regards to the failure to warn claim, Defendants argue that the Complaint fails to show how the alleged failure to warn Plaintiff's physicians caused her injuries. (Doc. 14 at 8). Specifically, they argue that the Complaint fails to allege how the physicians would have acted differently had they been provided with a different warning. (*Id.*) In response, Plaintiff cites the Complaint, which provides a list of warnings that Defendants allegedly failed to provide to Plaintiff and her physicians. (Docs. 18 at 7; 1 at ¶ 40). This response misses the point. The Complaint needs to show how the alleged failure to warn caused the injury, and simply alleging warnings that Defendants should have included does not satisfy this element. *See Sw. Pet Prods.*, 273 F. Supp. 2d at 1060. The Complaint does say that Plaintiff would not have relied on the Product if she had known the "true facts" about the risks. (Doc. 1 at ¶ 72). But because of the learned intermediary doctrine, a defendant's duty to warn ends once it provides an adequate warning to the healthcare provider. *Watts*, 365 P.3d at 947. Therefore, the focus of this failure to warn claim is on what Defendants told the health-care provider and whether inadequacies in those warnings caused Plaintiff's injuries. On this point, the Complaint is silent. It does not name the treating physicians who received the allegedly inadequate warning, nor does it state that these physicians would have acted differently had they received a different warning. Therefore, the Court finds that Complaint fails to allege facts raising a plausible failure to warn claim. *See Twombly*, 550 U.S. at 570. The failure to warn claim, Count III, will be dismissed.

/ / /

### iii. Defective Product

Defendants argue that Arizona law does not recognize a defective product claim. (Doc. 14 at 16). Indeed, "[t]hree types of defects can result in an unreasonably dangerous product: (1) design defects, (2) manufacturing defects, and (3) informational defects encompassing instructions and warnings." *Gosewisch*, 737 P.2d at 379. Plaintiff makes no argument in response. The defective product claim, Count IV, will be dismissed.

### iv. Design Defect

Defendants argue that the Complaint fails to adequately allege a design defect because the Complaint does not allege how the Product caused Plaintiff's injury. (Doc. 14 at 5). A claim of design defect entails a showing that a product's design was defective, unreasonably dangerous, and that the defect proximately caused the plaintiff's injury. *Barnes v. Sandoz Crop Prot. Corp.*, 938 P.2d 95, 97 (Ariz. Ct. App. 1997); *Vineyard v. Empire Mach. Co., Inc.*, 581 P.2d 1152, 1155 (Ariz. Ct. App. 1978).

Plaintiff argues that the Complaint adequately pleads how the Product's design caused her injuries. (Doc. 18 at 3). She cites two paragraphs in the Complaint. One states "a large subset of the population" that received the Product suffers from an adverse immune response. (Doc. 1 at ¶ 21). The other states that the Product is prone to failure and caused injury to Plaintiff. (*Id.* at ¶ 27). The Complaint does not, however, state that Plaintiff suffered from an adverse immune response or otherwise describe how the Product implanted in Plaintiff failed. The most detailed pleadings about Plaintiff, found in the first three paragraphs, only show that the Plaintiff is domiciled in Arizona, that she was implanted with the Product in 2006, and that in 2019 she "underwent vaginal mesh revision/excision, posterior repair, and enterocele repair surgery, at Banner Gateway Medical Center . . . ." (*Id.* at ¶¶ 2, 3). But these allegations, and all the rest, simply fail to show how the Product caused *this* Plaintiff's specific injury. The design defect claim, Count V, will be dismissed. And with that, the Court notes, the Complaint fails to state any of its strict liability claims.

/ / /

- 7 -

### c. Negligence

The Complaint's negligence claims include counts of negligence, negligent misrepresentation, negligent infliction of emotional distress, and gross negligence. (Doc. 1 at ¶¶ 89–94, 166–74, 217–21). Defendants argue that if the Complaint fails to state a claim for strict liability, it necessarily cannot state a claim in negligence. (Doc. 14 at 9). The Court agrees. *See Gomulka v. Yavapai Mach. & Auto Parts, Inc.*, 745 P.2d 986, 990 (Ariz. Ct. App. 1987) ("If [a plaintiff] cannot prove his case in strict liability, he cannot prove it in negligence either."). As explained above, the Complaint fails to allege causation: how the Product, its design, or a failure to warn caused Plaintiff's injury. Causation is an essential element to negligence claims. *Keck v. Jackson*, 593 P.2d 668 (Airz. 1979) (noting that a claim for negligent infliction of emotional distress requires a showing of causation); *Dinsmoor v. City of Phoenix*, 468 P.3d 745, 749 (Ariz. Ct. App 2020) (stating that claims for negligence and gross negligence require a causal connection between the alleged breach and injury); *KB Home Tucson, Inc. v. Charter Oak Fire Ins. Co.*, 340 P.3d 405, 411 (Ariz. Ct. App. 2014) (stating that negligent misrepresentation claims are governed by the principles of negligence). Therefore, all of the Complaint's negligence claims, Counts I, IX, X, and XIV, will be dismissed.

### d. Fraud

The Complaint's fraud claims include common law fraud, fraudulent concealment, and constructive fraud. (Doc. 1 at ¶¶ 120–65). Defendants argue that the Complaint fails to meet Federal Rule of Civil Procedure 9(b)'s heightened pleading standard for fraud allegations. (Doc. 14 at 14). Plaintiff's Response repeats her legal conclusion that Defendants committed fraud, but she does not specifically argue that the Complaint alleges fraud with particularity. (Doc. 18 at 11–14).

To state a fraud claim with particularity, a complaint must include "an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Swartz*, 476 F.3d at 764 (citation omitted). The Complaint generally alleges that Defendants fraudulently misrepresented the Product's

characteristics to Plaintiff, her physicians, healthcare providers, and the Food and Drug Administration ("FDA"). (Doc. 1 at ¶¶ 67, 85). The only documents mentioned, the Product's brochures and instructions for use, are quoted as saying that the Product's known complications are "rare" and "small." (*Id.* at ¶ 26). Beyond this, nothing in the Complaint details the specific content of those documents, when they were made, nor the identities of the key parties, such as Plaintiff's physicians, who received the alleged misrepresentations. It is enough to say that the Complaint fails to allege fraud with particularity, and so those claims, Counts VI, VII, and VIII, will be dismissed.

### e. Consumer Protection Laws

The Complaint alleges that Defendant violated Arizona's consumer protection laws, but it does not specify which laws in particular. (Doc. 1 at ¶¶ 198–216). Defendants note this lack of specificity in their Motion. (Doc. 14 at 15). They argue that even under Arizona's Consumer Fraud Act, the claim would still fail to allege the circumstances giving rise to fraud with particularity as Plaintiff would be required to do under Rule 9(b). (*Id.*) Plaintiff confirms in its Response that it is bringing its claim under Arizona's Consumer Fraud Act. (Doc. 18 at 14). Because Count XIII is essentially a fraud claim, it will be dismissed, just as the other fraud claims were dismissed, for failing to allege facts with particularity. *See Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) ("It is established law, in this circuit and elsewhere, that Rule 9(b)'s particularity requirement applies to state-law causes of action.").

### f. Warranties

The Complaint alleges a breach of both implied and express warranty. (*Id.* at ¶¶ 175–97). Defendants argue that an implied warranty claim is not available under Arizona products liability law when a complaint also brings a claim of strict liability. (Doc. 14 at 11–26) (citing *Scheller v. Wilson Certified Foods, Inc.*, 559 P.2d 1074, 1076 (Ariz. Ct. App. 1977) ("[In Arizona] the theory of liability under implied warranty has been merged into the doctrine of strict liability in tort, so that it is on this latter doctrine that the plaintiff's claim must stand or fall."); *Hearn v. R.J. Reynolds Tobacco Co.*, 279 F. Supp. 2d 1096,

1102 (D. Ariz. 2003)). The Court agrees. The implied warranty claim, Count XII, will be dismissed.

An express warranty, under Arizona statute, is made when a seller makes an affirmation or promise to the buyer which relates to the good being sold. A.R.S. § 47-2313. Advertisements may give rise to express warranties. *See Eck v. Helene Curtis Indus., Inc.*, 453 P.2d 366, 369 (Ariz. Ct. App. 1969). Still, the focus of the inquiry is on what affirmations were specifically made from the seller to the buyer. *Martin v. Medtronic, Inc.*, 63 F. Supp. 3d 1050, 1060 (D. Ariz. 2014); *Arvizu v. Medtronic Inc.*, 41 F. Supp. 3d 783, 793 (D. Ariz. 2014); *Ramirez v. Medtronic Inc.*, 961 F. Supp. 2d 977, 1001 (D. Ariz. 2013).

Defendants argue the Complaint's express warranty claim fails because it does not identify the affirmations made to Plaintiff. (Doc. 14 at 11). Plaintiff responds by citing to where the Complaint alleges that Defendants marketed and promoted the Product as "safe" and "minimally invasive," thus creating an express warranty. (Docs. 18 at 11; 1 at ¶¶ 20, 23, 24). Plaintiff argues in her Response that, because the Product injured her, the Product was not safe and so violated the express warranty. (Doc. 18 at 11).

The Complaint alleges that Defendants represented the Product's potential complications as "rare" and "small." (Doc. 1 at ¶ 26). This shows Defendants did not warrant that the Product would be perfectly safe. And, without further allegations describing the facts of Plaintiff's particular injuries, it is not clear whether the injuries fell outside of the forewarned complications. Again, the Complaint does not explain what injury Plaintiff suffered from the Product. It only states that she "underwent vaginal mesh revision/excision, posterior repair, and enterocele repair surgery . . . ." (*Id.* at ¶ 3). Without alleging facts showing the particular injury Plaintiff received from the Product, the Complaint cannot show that Defendants breached its express warranty. Therefore, the express warranty claim, Count XI, will be dismissed.

### g. Unjust Enrichment

The Complaint brings a claim for unjust enrichment. (Doc. 1 at ¶¶ 222–26). Unjust enrichment is an equitable remedy, and "[t]o recover on a claim for unjust enrichment, a

claimant must show (1) an enrichment, (2) an impoverishment, (3) a connection between the two, (4) the absence of justification for the enrichment and impoverishment and (5) the absence of any remedy at law." *Mousa v. Saba*, 218 P.3d 1038, 1045 (Ariz. Ct. App. 2009). As noted above, the Complaint fails to make factual allegations that the Product caused Plaintiff's injury. The Complaint, therefore, does not adequately allege a connection between Defendants' enrichment (profits from the Product) and Plaintiff's impoverishment (injuries from the Product). The unjust enrichment claim, Count XV, will be dismissed.

### h. Punitive Damages

Finally, the Complaint brings a claim for punitive damages. (Doc. 1 at ¶¶ 227–42). Under Arizona law, manufacturers are not liable for punitive damages if the product was approved by a government agency. A.R.S. § 12-689(A)(1). Defendants argue that the Product was subject to FDA approval, and, therefore, punitive damages are not available. (Doc. 14 at 16). Plaintiff argue that, because she alleges Defendants fraudulently withheld material information from the FDA, their claim for punitive damages falls under a statutory exception. (Doc. 18 at 15). Under this exception, punitive damages are available if a manufacturer "[i]ntentionally, and in violation of applicable regulations as determined by final action of the government agency, withheld from or misrepresented to the government agency information material to the approval or maintaining of approval of the product . . . and the information is relevant to the harm that the claimant allegedly suffered." A.R.S. § 12-689(B)(2). In addition to the fact that the Complaint fails to allege fraud with particularity, the Complaint also fails to allege that the FDA determined by final action that Defendants withheld or misrepresented information relevant to the Product's approval. The statutory exception does not apply, and the claim for punitive damages, Count XVII, will be dismissed.

### IV. Conclusion

Because the Complaint fails to state any cause of action, it will be dismissed in its entirety.

/ / /

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (Doc. 14) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Complaint (Doc. 1) is **dismissed** with leave to file a First Amended Complaint within thirty (30) days of the date this Order is entered;

**IT IS FINALLY ORDERED** that if Plaintiff does not file does not file a First Amended Complaint within thirty (30) days of the date this Order is entered, the Clerk of Court shall dismiss this action without further order of this Court.

Dated this 2nd day of November, 2020.

Honorable Diane J. Humetewa
United States District Judge